NOT DESIGNATED FOR PUBLICATION

No. 114,855

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
ROBERT M. GERLEMAN,
*Appellant*,

and

JEANNETTE M. GERLEMAN,
*Appellee.*

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed January 6, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Robert M. Gerleman*, pro se appellant.

*Curtis G. Barnhill*, of Curtis G. Barnhill, P.A., of Lawrence, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

*Per Curiam*:  Robert M. Gerleman appeals the district court's decision to issue a qualified domestic relations order (QDRO) to the Defense Finance and Accounting Services (DFAS) for 50% of his military pension for the benefit of his former wife, Jeannette M. Gerleman. We find the record is insufficient to support the QDRO as drafted and remand the matter to the district court to specifically determine, based on the document attached to the decree of divorce, what it found to be the equitable division of appellant's military pension. The record is sufficiently clear the division was to be effective on the date of Robert's retirement and any payments not made starting with its

1

accrual on September 1, 2014, must be paid by Robert to Jeannette pursuant to the decree of divorce. Affirmed in part, reversed in part, and remanded with directions.

FACTS

Robert filed a petition for divorce from Jeannette, to whom he had been married for 20 years. The district court entered a decree of divorce with an attached summary of division of property dated May 23, 2013. Jeannette immediately appealed the decree of divorce and the summary of division of property, and Robert cross-appealed. The parties settled the issues of that appeal and it was dismissed. See *In re Marriage of Gerleman*, No. 110,461, 2015 WL 1513967 (Kan. App. 2015) (unpublished opinion). Now Robert appeals the district court's recent issuance of a QDRO dividing his military pension.

Although the details had not been completely finalized, on May 9, 2013, the parties appeared in district court and testified regarding an agreement they reached during mediation. At a May 23, 2013, motion for contempt hearing, the district court asked why the motion was not moot in light of the settlement agreement and was informed the parties did not believe the case had settled. The district court pointed out the parties had laid out a fairly extensive agreement on the record. The parties argued about how and when to value Robert's military pension and whether Robert had to secure his military pension with survivor benefits or life insurance. After discussing these issues, the district court ordered Robert's counsel to draft the divorce decree. Jeannette's counsel offered to draft the decree because it was already prepared, but the district court told her Robert's counsel would draft the decree, and she would have an opportunity to object.

The district court filed the decree of divorce with an attached summary of division of property on July 24, 2013. The district court found the parties had entered into a written summary of division of property and the terms of the summary of division of property were valid, just, and equitable. It incorporated the summary of division of

2

property into the divorce decree by reference and made its factual findings part of the judgment.

The summary of division of property approved by the district court divided all of the parties' assets including Robert's military pension, which specifically provided:

| Item | Husband | Wife |
|---|---|---|
| US Military Pension 5/9/13 (handwritten) | Divided at husband's retirement based on military formula = # years of marital service/total months of military service TBD | Divided at husband's retirement based on military formula = # years of marital service/total months of military service TBD |

In addition to incorporating the summary of division of property, the divorce decree also stated:

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Marital Separation and Property Settlement Agreement executed by and between the parties is hereby approved and confirmed by the Court and incorporated in this Decree of Divorce as though fully set forth herein; the division of property, payment of debts, child support, maintenance are awarded, entered and allowed as set forth in the Agreement."

However, the marital separation and property settlement agreement was neither executed by the parties nor included with the divorce decree.

Robert retired from the military in September 2014. On January 12, 2015, Jeannette filed a proposed order pursuant to Kansas Supreme Court Rule 170 (2015 Kan. Ct. R. Annot. 264) dividing Robert's military pension pay. Robert objected raising

3

numerous issues. Jeannette filed another proposed order pursuant to Kansas Supreme Court Rule 170. Robert objected again.

On October 15, 2015, a different district court judge than the one who presided over the divorce heard arguments regarding how Robert's military pension should be divided by the QDRO pursuant to the decree of divorce. Robert argued there was never an agreement dividing his military pension. He argued the summary of division of property should be struck because, on appeal, Jeannette argued the decree was deficient since there was no signed settlement agreement and she had abandoned her appeal. Jeannette argued the summary of division of property was included in the divorce decree, and Robert acknowledged the district court awarded Jeannette a portion of his military pension in the supplemental property agreement the parties signed before jointly dismissing their appeals. The district court determined the marital assets were ordered divided according to the summary of division of property because otherwise the divorce decree did not address property division at all.

Robert objected to the formula used to calculate Jeannette's portion of his pension because it differed from the formula in the divorce decree. The district court found the formula was the same. Robert also objected to being ordered to personally pay if DFAS was prohibited from paying by law or regulation. The district court found the language was consistent to the decree because it simply affirmed Robert was not relieved of his obligation under the decree if DFAS did not pay.

Following the hearing, the district court ordered Robert's military pension be divided pursuant to the divorce decree. Paragraph 8 of the order dividing military pension stated:

"The Former Spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which

4

is 226 months of marriage during the Service Member's creditable service, divided by the Service Member's total number of months of creditable service."

In addition, Paragraph 9 stated:

"The above amount shall be paid directly to the Former Spouse by the Designated Agent. To the extent the Designated Agent is prohibited by law or regulation from paying the entire amount required by this order to the Former Spouse, the Service Member shall personally pay any shortfall to the Former Spouse."

Robert appeals.

ANALYSIS

*The divorce decree with the attached summary of division of property lacks clarity.*

The interpretation and legal effect of written instruments, including divorce decrees, are matters of law, and an appellate court exercises unlimited review. *Einsel v. Einsel*, 304 Kan. 567, 579, 374 P.3d 612 (2016). The question of whether a written instrument is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013).

A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. The court will not strain to find an ambiguity where, in common sense, there is none. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013). Where ambiguity or uncertainty is involved in a written instrument, the parties' intentions are ascertained by considering the language used, the circumstances existing when the instrument was made, the objective of the written instrument, and other circumstances tending to clarify the real intention of the party or parties. *Byers v. Snyder*, 44 Kan. App. 2d 380, 386, 237

5

P.3d 1258 (2010). "'"In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided."' [Citations omitted.]" *Einsel*, 304 Kan. at 581.

Robert argues the divorce decree is ambiguous because it purports to divide marital property pursuant to two different instruments. Paragraph 9 of the divorce decree states:

> "Simultaneously with the entry of this Decree of Divorce, the parties entered into a written Summary of Division of Property and Permanent Parenting Plan which shall be filed herein. This Agreement provides for: the joint legal custody of the parties' minor children, parenting time, child support, maintenance, the division of personal assets of the parties, the payment of debts and obligations of the parties, the costs associated with mediation and the guardian ad litem, and the disposition of all other rights involved in the marriage."

Paragraph 11 states: "The terms and conditions of the Summary of Division of Property are valid, just and equitable and the Agreement should be confirmed by the Court and adopted and incorporated by reference in its entirety into this Decree of Divorce."

The divorce decree incorporated these findings as part of its judgment. The divorce decree also states:

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Marital Separation and Property Settlement Agreement executed by and between the parties is hereby approved and confirmed by the Court and incorporated in this Decree of Divorce as though fully set forth herein; the division of property, payment of debts, child support, maintenance are awarded, entered and allowed as set forth in the Agreement."

6

The record clearly reflects no marital separation and property settlement agreement was ever executed by the parties, and the reference to it in the decree of divorce was an error. The record does reflect the district court approved the summary of division of property as its order distributing the assets of this marriage. The decree of divorce was appealed by both parties, the issues involving the property division as contained in the divorce decree were settled pending the appeal, and that portion of the appeal was dismissed by our court pursuant to an order dated February 21, 2014. Thus, we are left with a final divorce decree that must be interpreted and applied for the benefit of both parties as the law of the case.

As previously described above, the summary of division of property incorporated into the decree of divorce said Robert's military pension would be "[d]ivided at husband's retirement." Robert contends the term divided does not mean a 50/50 split, and Jeannette claims it is a 50/50 split based on the accrued interest at the time the divorce was granted. Thus, the real issue is how the word divided is to be applied to the summary of division of property.

Our reading of the summary of division of property is that once the months of total service by Robert was determined—a fact unknown at the time the divorce decree was entered—the formula could be applied to the pension account, however the court intended it to be assigned. The parties agree Jeannette and Robert were married for 226 months of his total military career. The record reflects Robert's total military service was 242 months.

The correct division of Robert's military pension, as approved in the summary of division of property, is a factual question that is unclear and requires this court to remand for the district court to determine how the summary of division of property assigned Robert's military pension between Robert and Jeannette when Robert retired.

7

*Robert's Responsibility to Pay Jeannette Since September 1, 2014*

Clearly, the summary of division of property, as incorporated in the decree of divorce, orders the assignment of a portion of Robert's pension to Jeannette when he started receiving his pension. We are now more than 2 years past the date Robert retired and started receiving payments. Jeannette has received no pension payments from DFAS because no QDRO has been submitted. The district court addressed this issue with paragraph 9 in the QDRO, which states:

> "Pay Directly to Former Spouse. The above amount shall be paid directly to the Former Spouse by the Designated Agent. To the extent the Designated Agent is prohibited by law or regulation from paying the entire amount required by this order to the Former Spouse, the Service Member shall personally pay any shortfall to the Former Spouse."

Robert argues this language does not appear in the decree or the summary of division of property. He is correct. As such, he argues:

> "Indeed, there was no justification for the modification because there was unambiguously no mention of indemnification in the Summary of Division of Property. But if this Court were to interpret the decree to enforce the 'Summary of Division of Property,' it must be interpreted, as stated above, by determining the intent of the parties. *In re Marriage of Wessling*, [12 Kan. App. 2d 428, 429,] 747 P.2d 187[ (1987)]. Any enforcement of that decree must be based in the language itself as the expressed intent of the parties. *Id.* And there is no evidence in the record showing that the intent of the parties was to make Petitioner personally liable to pay retirement funds not paid by DFAS."

However, the district court's division of property in a divorce proceeding is a judgment. *Bank IV Wichita v. Plein*, 250 Kan. 701, 706, 830 P.2d 29 (1992). The district court awarded Jeannette a portion of Robert's military pension when it incorporated the

summary of division of property into the divorce decree. In essence, Robert is asking this court to find there is a distinction between ordering a division of property and ordering him to pay the divided property. There is no such distinction. As the district court noted during the October 15, 2015, hearing, "all this language affirms is that if the designated agent doesn't pay, it won't relieve Mr. Gerleman of his obligation under the decree." See *In re Marriage of Gurganus*, 34 Kan. App. 2d 713, 719, 124 P.3d 92 (2005) (Statute governing payment of military pension does not prevent a party from agreeing to pay an ex-spouse a portion of his or her military pension in a separation agreement. Instead, the retiree must make the payment directly to the ex-spouse, rather than having the government withhold the money and make the payments, if the parties were not married for more than 10 years.).

The inclusion of Paragraph 9 in the QDRO dividing Robert's military pension was not an impermissible modification of the divorce decree. Additionally, we note that at oral argument, Robert agreed that whatever percentage of his pension account was due Jeannette and not paid to her by DFAS he would be responsible to pay to her because he has been receiving 100% of the military pension since his retirement on September 1, 2014.

*The district court erroneously determined the order dividing Robert's military pension was required by law.*

Robert argues the district court erred as a matter of law when it determined a separate order was required by DFAS in order to enforce the decree. However, Robert does not argue the district court cannot divide military pension through a separate QDRO. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). We acknowledge it is a common practice for a QDRO to be prepared for submission to the third party administrator directing how the pension funds should be distributed as a result of the

9

divorce and division of the marital assets. Generally, a QDRO contains language not in the divorce decree and contains the various terms the third party administrator may require.

*The district court did not act contrary to the law of the case when it issued the order dividing military pension.*

Robert also argues the district court acted contrary to the law of the case when it issued the order dividing military pension. He asserts:

> "Thus, the law of the case as of February 21, 2014, is that the parties had settled all issues related to the divorce and subsequent property settlement matters such that the Decree would stand as it was written. The district court had no authority to act contrary to that decision and exceeded its jurisdiction in issuing the Order Dividing Military Retirement pay."

When neither party appealed the February 21, 2014, order from this court dismissing "all issues related to the divorce and subsequent property settlement matters," the divorce decree became the law of the case, and, as a result, both parties are prevented from relitigating issues related to the divorce and property settlement matters. See *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 737, 334 P.3d 830 (2014), *rev. denied* 302 Kan. 1008 (2015) ("The law-of-the-case doctrine prevents relitigation of the same issues within successive stages of the same lawsuit."). However, as discussed above, the divorce decree dividing Robert's military pay was not specific. It appears to us it was a 50/50 split based on the accumulated value at the time of the divorce, but the record is unclear. Therefore, we remand for the district court to clarify how it intended to divide Robert's military pension and to issue an appropriate QDRO for DFAS to apply to Robert's military pension account. The district court must also determine what Robert owes Jeannette for her respective share of the military pension since DFAS began making payments to Robert effective September 1, 2014 (his retirement date).

10

Robert briefed many other issues for this court to address that we deem unnecessary to answer with our resolution of the issues herein and our order for remand.

Affirmed in part, reversed in part, and remanded with directions.