(32 P.3d 1212)
No. 86,790

In the Matter of the Marriage of REX ROMAINE BAHR, *Appellant*, and ELLA MARIE BAHR, *Appellee*.

Opinion filed September 28, 2001.

*Frank D. Taff*, of Topeka, for appellant.

*Patricia A. Reeder* and *L. Kathy Moen*, of Woner, Glenn, Reeder & Girard, P.A., of Topeka, for appellee.

Before ELLIOTT, P.J., BEIER, J., and PADDOCK, S.J.

PADDOCK, J.: Rex Romaine Bahr appeals the maintenance award for his former wife Ella Marie Bahr.

This is the second appeal by Rex concerning the maintenance award fashioned by the trial court upon dissolution of his marriage with Ella.

In initially awarding maintenance, the trial court held it could consider, but not divide, Rex's veteran administration's (VA) disability benefits. Rex appealed, claiming among other things, that the trial court could not consider his disability benefits when arriving at a maintenance award for Ella.

On appeal, in an unpublished opinion, this court affirmed the trial court on all claims of error alleged by Rex with the exception

of the maintenance award. Although the maintenance award was reversed, this court did not conclude that the trial court's maintenance award was erroneous. Rather, the case was remanded with instructions that the trial court consider the impact in the award of the Uniform Services Former Spouse's Protection Act, 10 U.S.C. § 1408 (1994) (the Act), and the decisions in *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), and *In re Marriage of Pierce*, 26 Kan. App. 2d 236, 982 P.2d 995, *rev. denied* 268 Kan. 887 (1999). *In re Marriage of Bahr*, unpublished opinion No. 82,344 filed February 18, 2000. Slip op. at 2-3.

Upon remand, the trial court abated the payment of maintenance pending disposition of the case. Again, acknowledging that federal law does not permit a state court to divide VA disability benefits as marital property, the district court again concluded that federal law does not bar a state court from considering the receipt of such benefits when equitably dividing marital property. The district court ordered that consideration of the Act did not require an amendment to the property distribution initially ordered. The court reimposed its initial maintenance award, including $37,502.20 in back payments for the period during which maintenance payments were abated.

When a district court decision is reversed and remanded for further proceedings, the district court is obliged to effectuate the mandate from the appellate court and may not consider additional matters not necessary to implement the ruling of the appellate court. Upon a second appeal, an appellate court must consider only whether the district court properly implemented the mandate, which is a question of law, giving the appellate court unlimited review. See *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 231, 898 P.2d 1131 (1995).

Thus, in the present appeal, the only issue is whether federal law permits a state court to consider a party's receipt of VA disability benefits in allocating other property of the marriage to be paid in maintenance to a nonveteran spouse.

Rex cites *Pierce* for the proposition that a state court can neither directly nor indirectly allocate disability benefits to a nonveteran spouse. The circumstances in *Pierce* were entirely different from

those in the present case. In *Pierce* the trial court awarded the nonveteran spouse 18/20 of one-half of the veteran spouse's military benefits. 26 Kan. App. 2d at 237. Later, the military benefits were entirely converted to disability benefits, precluding benefits to the nonveteran spouse. The trial court denied the nonveteran spouse's motion for modification of the property settlement agreement. On appeal, this court affirmed the trial court and noted that when the benefits become entirely exempt through their conversion to disability benefits, the nonveteran spouse was left with a fractional interest in nothing. 26 Kan. App. 2d at 240.

Here, however, the trial court did not, in either its original order or its final order, award an interest in disability benefits or military benefits capable of conversion to disability benefits to Ella. Rather, the trial court merely considered Rex having disability benefits in determining the economic position of the parties with respect to each other.

Should *Pierce* be interpreted as Rex suggests, the case represents a departure from similar case law in Kansas. In *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998), the Kansas Supreme Court articulated the fundamental principle that Kansas law grants jurisdiction to the district courts to consider all property regardless of the method of its acquisition in deriving a just and equitable settlement between divorcing parties. The court also approved the holding of *In re Marriage of Brane*, 21 Kan. App. 2d 778, 908 P.2d 625 (1995), which emphasized that military retirement pay, then exempt from property division by *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), *superceded by statute* 10 U.S.C. § 1401 *et seq.*, could be considered by a state court in distributing the other property of the marriage. 21 Kan. App. 2d at 782-83.

In a different context, this court has concluded that a district court does not abuse its discretion in considering the receipt of social security benefits in the property division, even though the benefits were the exclusive property of one spouse due to a federal anti-assignment statute. See *In re Marriage of Knipp*, 15 Kan. App. 2d 494, Syl. ¶ 2, 809 P.2d 562, *rev. denied* 248 Kan. 995 (1991).

Based on the reasoning of these cases, plus the overarching authority granted to district courts by the Kansas Legislature to equitably divide property in a divorce, there appears to be no rational reason that the district court cannot consider the petitioner's receipt of veteran's benefits in calculating the need for support to be taken from the veteran's other property.

Other states which have considered this question have reached a similar conclusion. See *Clauson v. Clauson*, 831 P.2d 1257, 1263 (Alaska 1992); *Womack v. Womack*, 307 Ark. 269, 270-71, 818 S.W.2d 958 (1991); *In re Marriage of Franz*, 831 P.2d 917, 919 (Colo. App. 1992); *Allen v. Allen*, 650 So. 2d 1019, 1020 (Fla. App. 2d Dist. 1994); *Jones v. Jones*, 7 Haw. App. 496, 501, 780 P.2d 581 (1989); *Marriage of Strong*, 300 Mont. 331, 341, 8 P.3d 763 (2000); *Marriage of Kraft*, 119 Wash. 2d 438, 451, 832 P.2d 871 (1992); and *In re Marriage of Weberg*, 158 Wis. 2d 540, 544-45, 463 N.W.2d 382 (1990).

In *Clauson*, the court drew a careful distinction between considering the economic consequences of one spouse's receipt of military disability benefits and offsetting the receipt of such benefits by giving the other spouse other property. That court stated:

"We are aware of the risk that our holding today might lead trial courts to simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side. This is unacceptable. In arriving at an equitable distribution of marital assets, courts should only consider a party's military disability benefits as they affect the financial circumstances of both parties. Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage." 831 P.2d at 1264.

The district court, in the present case, specifically noted that the petitioner and respondent had been involved in a long-term relationship, but due to the nature of the property awarded to the respondent, she would have fewer liquid assets than the petitioner. Taking into account the parties' entire income, the court determined that the respondent needed support to provide regular income. Therefore, the court awarded the military disability benefits to the petitioner but required payment of spousal maintenance out of other assets.

In a long-term relationship such as the parties possessed here, where each contributed substantially to the relationship, a determination that the relative incomes of the parties upon dissolution of the marriage should be equal is clearly not an abuse of discretion. Further, nothing in federal law prohibits the court from considering the extent of income each spouse is receiving, including disability benefits, when determining an equitable distribution of the financial assets accumulated over the course of the marriage. The district court did not err in considering the petitioner's disability benefits in calculating the amount the petitioner would be required to pay to the respondent for maintenance.

As a parallel issue concerning the maintenance award, Rex questions the trial court's method of ordering maintenance payments.

Ella was initially awarded maintenance for 121 months at the rate of $1,973.80 monthly until she attained the age of 65 and thereafter at the rate of $1,773.80 monthly. The maintenance payments began October 5, 1998.

Following the remand of the case, the trial court again concluded it was not prohibited from considering military disability benefits when contemplating spousal maintenance. The trial court ordered that the initial maintenance order would be in effect and that Rex must pay monthly maintenance retroactively from the date of the original order, minus credit for payments made. In reinstating the initial order, the trial court stated:

"If the reversal of the initial maintenance award would be construed to vacate the original award, Mr. Bahr would be entitled to 19 months of prospective credit. Conversely, Ms. Bahr would not receive monthly support for 19 months. Expressed in dollars, not reinstating the initial award would result in Ms. Bahr being denied $37,502.20, which this Court finds she should be entitled to under the facts and the law. If the award is not reinstated, the equitable balance struck by the Court would be upset and Ms. Bahr would be unjustly strained financially."

Rex argues that the reversal of the trial court's initial maintenance order makes that order void and that all payments made should be returned to him. In other words, Rex opines that Ella is not entitled to any maintenance for the period prior to January 24, 2001, the date of the trial court's final maintenance order.

It is textbook law that when an appellate court determines that some part of the trial court's judgment was *erroneous* and orders reversal, the portion of the appellate court opinion which conflicts with the reasoning of the trial court stands in place of the judgment. When a trial court enters the same order as it had prior to appeal, the order is not a reinstatement but a new order effective as of the date ordered. 5 Am. Jur. 2d Appellate Review, § 784.

Here, however, this court in the first appeal did not determine that the trial court's consideration of the disability benefits when contemplating maintenance was erroneous. Neither did this court's opinion conflict with the trial court's reasoning. The appellate opinion merely directed the trial court to consider the effect of the Act, *Mansell*, and *Pierce* on the maintenance award. The trial court complied with the mandate by considering the authority it was ordered to review and reaffirmed its previous order.

Thus, under the special circumstances present here, we do not consider the trial court's final order to be an award of maintenance retroactively and, thus, not *future* support authorized by K.S.A. 1997 Supp. 60-1610(b)(2). See *In re Marriage of Brown*, 247 Kan. 152, 166-67, 795 P.2d 375 (1990) (construing the term "future support" literally, finding a district court is not authorized to award support payments retroactively).

Finally, other extraneous issues raised by Rex are not properly before this court as they are outside the purview of the mandate of this court in the first appeal.

Affirmed.